IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID W. LEEK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-1446-L-BN |
| | § | |
| FROST BANK and FRIDGE & | § | |
| RESENDEZ, LLC, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff David W. Leek filed this *pro se* action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against Defendants Frost Bank and Fridge & Resendez, LLC ("F&R"). *See* Dkt. No. 3.

His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay.

The Court granted Leek leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 5. And Leek has amended his claims by filing verified responses to the Court's screening questionnaire. *See* Dkt. Nos. 6 & 7.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this case with prejudice.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily

dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g., Starrett*, 2018 WL 6069969, at *2

(citations omitted)).

Dismissal for failure to state a claim under either Rule 12(b)(6) or Section 1915(e)(2)(B)(ii) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the IFP statute nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")))

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).

But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff" and thus "transform the district court from its legitimate advisory role to the

improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Analysis

In general, it appears that Leek alleges that Frost Bank and F&R furnished inaccurate information to credit reporting agencies and then did not respond to his requests concerning these allegations. His confusing complaint seems to allege violations of the FDCPA (under Section 1692g, against F&R) and the FCRA (under Sections 1681s-2 and 1681o, against Frost Bank). *See generally* Dkt. No. 3.

I.    After being allowed leave to amend, Leek still fails to allege a plausible FDCPA claim against F&R.

Leek alleges, in sum, that F&R violated Section 1692g by not responding to his validation letter sent in January 2018. *See* Dkt. No. 3, ¶¶ 15, 108, 109, & 110. Given Leek's sparse factual allegations, the Court offered him an opportunity to amend this claim through verified responses to specific interrogatories. *See generally* Dkt. No. 6. In response, Leek affirms that his claim against F&R is that, as a "debt collector," it "failed to validate the debt." Dkt. No. 7 at 4. And he bases his assertion that F&R is a "debt collector" on that its "website says they do this." *Id.* at 6 (answering the Court's interrogatory "What facts lead you to believe that the person attempting to collect the debt from you collects debts as 'principal purpose' of their business or collects debts 'regularly'"); *see id.* at 8 (amending his allegations with a printout from the State Bar of Texas's website reflecting that Attorney John Resendez of Fridge & Resendez, LLC identifies "Creditor-Debtor" as one of his five specified practice areas).

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by collectors.'" *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (quoting 15 U.S.C. § 1692(e)); *see also Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-cv-2038-D, 2013 WL 4551614, at *2 (N.D. Tex. Aug. 28, 2013) ("The FDCPA seeks 'to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.'" (quoting *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351-52 (5th Cir. 2002); citing Section 1692(e) and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010))).

> For purposes of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." [15 U.S.C.] § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (per curiam).

*Bent*, 2013 WL 4551614, at *3.

Even at the pleadings stage, the Court need not accept Leek's mere allegation that F&R is a debt collector. *See id.* ("Plaintiffs' assertion that Defendant undertook the role of 'debt collector' is a legal conclusion that courts are not bound to accept as true." (citing *Iqbal*, 556 U.S. at 678)). And the facts that Leek does assert are not enough to plausibly allege that F&R undertook the role of "debt collector" – which "is fatal to [his] FDCPA claims." *Id.* (citations omitted). So, because the Court has granted Leek leave to amend this claim, *see Nixon*, 589 F. App'x at 279, and because further leave to amend would be futile, *see Stem*, 813 F.3d at 215-16, the Court should dismiss this claim with prejudice.

II.    After being allowed leave to amend, Leek still fails to allege a plausible FCRA claim against Frost Bank.

Like his allegations against F&R, Leek alleges that Frost Bank failed to respond to two letters "for validation/dispute" that he sent in November 2017 and March 2018. Dkt. No. 3, ¶ 11; *see also id.*, ¶ 13 (further alleging that he "disputed [the] information [allegedly furnished by Frost Bank] with Frost Bank and the three

national credit reporting agencies' Trans Union, Experian and Equifax"). Under

Section 1681s-2, Leek also alleges that

> Frost Bank violated the FCRA by failing to conduct a proper
> investigation of the Plaintiff's disputes based on information that the
> Defendant had filed with the credit reporting agencies.
> Those disputes claimed that the Plaintiff was not liable for the
> delinquent Frost Bank account appearing on Plaintiff['s] credit reports.
> Frost Bank failed to review all relevant information provided to them by
> the Plaintiff. And it failed to direct such consumer reporting agencies to
> delete inaccurate information about the Plaintiff from the files
> maintained by them.
> In addition, Frost Bank willfully and maliciously defamed the
> plaintiff by repeatedly reporting information about Plaintiff to various
> third parties i.e. the credit bureaus which it knew, or reasonably should
> have known, was false. As a result of such actions the Plaintiff has had
> his Credit Score significantly reduced and credit card lines of credit
> reduced.
> This erroneous and inaccurate information has been reported in
> the Plaintiffs credit reports since December 2015.

Dkt. No. 3, ¶¶ 66-69; *see also id.*, ¶ 104 (alleging that "Frost Bank on the Experian,

Trans Union, and Equifax credit reports of Plaintiff does not reflect that the

information is disputed by the consumer even though the Plaintiff has sent a letter

of validation/dispute to the Defendant and to date the Defendant has not responded.

The Defendant has reported this account to all three national credit reporting

agencies since November 2017 and has updated same for a period of seven months in

all three agencies through today"); *id.*, ¶ 107 (alleging that Leek "pulled his credit

report in January 2017, January 2018 and found that Frost Bank had entered

derogatory information into the Plaintiff's Trans Union, Experian and Equifax Credit

report indicating that the account was charged off and late. This remains in the

Plaintiff's credit report to date, the Defendant has updated the account on numerous

occasions").

Leek's FCRA claims – in addition to being conclusory – fail as a matter of law.

"Concerned by 'abuses in the credit reporting industry,' Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Hammer v. Equifax Info. Sevs., L.L.C.*, ___ F.3d ___, No. 19-10199, 2020 WL 5406367, at *1 (5th Cir. Sept. 9, 2020) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); citing 15 U.S.C. § 1681(b)); *see also Donna v. Countrywide Mortg.*, No. 14-cv-03515-CBS, 2015 WL 9456325, at *5 (D. Colo. Dec. 28, 2015) ("The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" (quoting Section 1681(b))).

"The FCRA 'places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.'" *Donna*, 2015 WL 9456325, at *5 (quoting *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 1186, 1192 (D. Kan. 2002)). Based on Leek's allegations, Frost Bank falls into the last category.

To the extent that Leek asserts a claim against Frost Bank, as a furnisher of information, under Section 1681s-2(a), it "fails as a matter of law because § 1681s-2(a) provides no private cause of action." *Id.* (collecting cases); *see also Scott v. Amex/Centurion S&T*, Nos. 3:01-cv-1594-H, -1595-H, -1596-H, 1597-H, 1598-H, 1599-H, -1600-H, -1601-H, -1602-H, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001)

("For furnishers of information to be liable to plaintiff under the FCRA, the Court must find non-compliance with § 1681s-2. That section addresses the responsibilities of furnishers of information to consumer reporting agencies. There is no cause of action, however, for failures to comply with § 1681s-2(a), except for actions by the State on behalf of residents of the State, as provided in § 1681s(c)(1)(B). *See* 15 U.S.C. § 1681s-2(c) (1998). Section 1681s-2(a) is exclusively enforced 'under section 1681s ... by the Federal agencies and officials and the State officials identified in [that] section.' *Id.* § 1681s-2(d).").

> Sections 1681n and 1681o, nevertheless, provide a private cause of action for the willful or negligent failure to comply with the requirements of § 1681s-2(b). *McMillan v. Experian Information Servs. Inc.*, 119 F. Supp. 2d 84, 88-89 (D. Conn. 2000). "[T]he plain language of Sections 1681n and Section 1681o when read in conjunction with Section 1681s-2, expressly provides a consumer remedy for violation by a furnisher of credit information of the obligations imposed under 15 U.S.C. § 1681s-2(b)." *Id.* at 89. The duties created by subsection (b) arise, however, only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information. *See* 15 U.S.C. § 1681s-2(b)(1) (1998). No cause of action against the furnisher of information accrues, therefore, until after the furnisher receives the requisite notice from a consumer reporting agency. That the consumer has notified the furnisher of information of a dispute does not suffice. *See Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001).

*Scott*, 2001 WL 1645362, at *4 (footnote omitted); *see also Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) ("Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C.A. §

1681s-2(b). To recover against a furnisher for violations of § 1681s-2(b), a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." (citations and footnote omitted)).

But "nothing in [Leek's complaint as amended by his verified interrogatory responses] indicates that defendants, i.e. the furnishers of information, received any notice from a credit reporting agency. [Leek] testified, furthermore, that he had no knowledge that defendants had received any notice from a credit reporting agency." *Scott*, 2001 WL 1645362, at *4; *see* Dkt. No. 7 at 3 (in response to an interrogatory requesting "how and when the credit reporting agencies notified Frost of your dispute," Leek states "I have nothing to show that the credit reporting agencies ever notified Frost Bank."); *see also id.* (further asserting that "Frost Bank never sent me anything showing that they did an investigation and I was never sent anything showing that Frost Bank reported anything to the credit reporting agencies.").

"In the absence of an allegation that defendants failed to comply with § 1681s-2(b) after receiving notice from a credit reporting agency, the Court should dismiss the FCRA claims as frivolous. In the absence of notice to defendants from a credit reporting agency, the claims lack an arguable basis in law. The legal theory simply has no merit without some advance notice to defendants by a credit reporting agency. That element is lacking under the scenario presented by [Leek]." *Scott*, 2001 WL

1645362, at *4; *see also Green v. RBS Nat'l Bank*, No. 4:06-CV-0188-HLM, 2008 WL 11417395, at *9 (N.D. Ga. Jan. 23, 2008) ("To state a cause of action under § 1681s-2(b), the plaintiff must show that the furnisher of information received notice of a dispute from a consumer reporting agency, as opposed to receiving notice from the plaintiff alone." (collecting cases)); *id.* at *9 n.4 ("Although Plaintiff may contend that he himself notified Defendant or Citizens Bank of disputes concerning the Account, no duty arose under § 1681s-2(b) unless and until Plaintiff filed a formal dispute with the consumer reporting agencies and the consumer reporting agencies notified Defendant or Citizens Bank of the dispute. Plaintiff could not trigger the duties of § 1681-s2(b) simply by notifying Defendant or Citizens Bank of a dispute himself." (collecting cases)); *Donna*, 2015 WL 9456325, at *5 ("Here, Ms. Donna fails to allege that the Defendants ever received notice of a dispute from a credit reporting agency. She fails to allege the critical link between the consumer reporting agencies and the Defendants. This claim fails to state a claim to which relief can be granted against the Defendants.").

Therefore, because granting further leave to amend would be futile, the Court should dismiss this claim with prejudice. *See Stem*, 813 F.3d at 215-16.

## Recommendation

The Court should dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 30, 2020

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE